RECEIVED
IN ALEXANDRIA, LA
MAY 18 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| TIMOTHY LAMONT PRICE (#10891-040) | DOCKET NO. 09-CV-0028; SEC. P |
| VERSUS | JUDGE DEE D. DRELL |
| FREDERICK MENIFEE, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION

Before the Court is the *pro se* complaint of Plaintiff Timothy Lamont Price, filed pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics[1]. Plaintiff is currently incarcerated at the Allenwood Federal Correctional Institution in White Deer, Pennsylvania; however, this lawsuit involves allegations from his time housed at United States Penitentiary in Pollock, Louisiana. Plaintiff names as defendants: Frederick Menifee, the Federal Bureau of Prisons (BOP) General Counsel, G. Maldonado, Jr., Administrative Remedy Coordinator, Joe Keffer, Associate Warden Bell, Dr. Joel D. Alexander, Nurse P. Allmendinger, Nurse J. Dallas, Nurse Practitioner P. Nordstrom, LPN J. Dunbar, Pharmacist M. Crockett, Physician's Assistant W. Vasquez, Mr. Smith, Nurse Frazier, Food Services Administrator B. Freas, Mr. Joyce, Mrs. Newman, Mr. Watson, Mrs. Zerr, Mr. Jefferson, Mr. Smith, Mrs.

---

[1] In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C.A. § 1983.

Millicks, Counselor Arrington, Dr. Hughs, and Correctional Officers Rodgers, Morrison, and Lindsey. Plaintiff complains that the defendants acted with deliberate indifference to his health and safety. He seeks monetary damages.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

**STATEMENT OF THE CASE**

Plaintiff alleges that, on Sunday September 30, 2007, he was injured while working in the kitchen at USP-P. Plaintiff was panning the oatmeal for the brunch meal. During the transfer of oatmeal, he stepped on the edge of a steel drain that was protruding up 2 to 3 inches above the floor. The grate caved in on Plaintiff's foot. Plaintiff fell and the pan of oatmeal spilled onto Plaintiff's face and right forearm.

Mr. Joyce unlocked the door following the accident and escorted Plaintiff to the Health Services Unit. Upon arrival, Plaintiff was examined by P. Allmendinger, who instructed Plaintiff to shower to wash off the oatmeal so the burns could be bandaged. Plaintiff was prescribed acetaminophen/codeine (Tylenol 3) 300mg and ibuprofen 600mg. [Doc. #1-4, p.8] He was advised to return the next morning. [Doc. #1-4, p.9]

On October 1, 2007, Plaintiff went to sick call because of extreme pain to his face as the burns started to blister. Nurse

Practitioner Nordstrom undressed the wounds and applied fresh bandages. He instructed Plaintiff to return at 9:30 a.m. so that Dr. Alexandre could examine the burns. The doctor instructed Plaintiff to leave the blisters alone and to return ever other day to have his bandages changed. Plaintiff's prescription for Tylenol 3 was extended an additional fourteen days, and the ibuprofen was increased to 800 mg and extended for thirty days. Plaintiff was also prescribed levofloxacin for fourteen days. [Doc. #1-4, p.11] Plaintiff alleges that, on this day, the "defective grates" in the kitchen were repaired by work crews. [Doc. #1, p.7]

On October 2, 2007, Plaintiff asked Warden Bell to send him to an outside physician because of increased pain and the severity of his burns. Bell personally escorted Plaintiff to Dr. Alexandre and inquired about Plaintiff's injury. Alexandre instructed Plaintiff to report at 9:30 the next morning. At the health clinic, LPN Dunbar noted some areas of blistering on the right arm and cheek area, as well as some areas of skin sloughing with pink tissue noted beneath. It was noted that the burns were of the 1st and 2nd degree. Dunbar cleaned the wounds, applied silvadene ointment, and wrapped non-stick gauze around the wounds. Plaintiff was instructed to keep the area clean and dry. [Doc. #1-4, p. 16]

On the morning of October 3, Plaintiff woke in the night to intensive, throbbing pain. He flagged down the officer making rounds who told Plaintiff that there was not a physician's

3

assistant on duty, so he would have to wait until the morning. At 6:30 a.m., Plaintiff received two Tylenol 3 pills and his antibiotic. At 8:00 a.m., Plaintiff's bandages were changed by Dunbar, who noted continued sloughing of the skin and pink tissue underneath, as well as some blistering. Dunbar cleaned the areas, applied silvadene ointment, and re-wrapped the wounds. [Doc. #1-4, p.16] Plaintiff alleges that Dunbar told him that he really needed to see a burn specialist. Plaintiff was told to return later that day to see Dr. Alexandre.

Also on October 3, Menifee and Bell approached Plaintiff and asked if he was feeling better. Plaintiff asked to be sent to an outside burn specialist. Menifee said that he would look into it. Plaintiff alleges that he heard Bell tell Menifee that Plaintiff was not going to get outside treatment.

On October 4, Dunbar again changed Plaintiff's dressings. [Doc. #1-4, p.17]

On October 5, 2007, Plaintiff alleges that his pain was even more intense than the day before. He again asked Menifee to send him to a burn specialist.

On October 6, 2007, Plaintiff spoke with Nurse Smith about being sent for "outside treatment." Smith ignored Plaintiff and never answered Plaintiff's request. He states that his bandages were changed twice that day.

Plaintiff alleges that, on October 7, 2007, RN Frazier changed

4

the bandages and tried to locate a sling for Plaintiff to use. She also told Plaintiff that she would try and talk to Dr. Alexandre to see if Plaintiff could be sent to a burn specialist because, in her opinion, he needed to be examined by one.

On the morning of October 8, 2007, Plaintiff asked Allmendinger during pill call if she could change his bandages. She instructed Plaintiff to come back at 12:00 p.m. Plaintiff approached Officer Morrison at 10:30 a.m. and Morrison observed the bandages soaked with pus. Morrision notified Allmendinger, and she again told Plaintiff to see her at noon. Plaintiff was not escorted to the medical department at the appointed time, but eventually, Officer Lindsey took Plaintiff to see the nurse. Nurse Allmendinger examined Plaintiff, noting that he was in no acute physical distress. [Doc. #1-4, p.17] Plaintiff alleges that he asked for Frazier to change his bandages because he believed Allmendinger was too rough when changing them. Allmendinger said Frazier was not available and made a note that Plaintiff refused to let her treat him. [Doc. #1, p.19]

Plaintiff alleges that he sought counseling, as he was very worried that he would be scarred for life. Plaintiff alleges that the counselor informed him that the BOP was not equipped to provide individual counseling for post traumatic stress disorder. There is a notation in Plaintiff's medical records that he was prescribed Elavil 25mg on October 6, 2007. [Doc. #1-4, p.17]

5

Plaintiff submitted an informal resolution attempt seeking a consultation with an outside burn specialist on October 9, 2007 and again on December 18, 2007. The response given to Plaintiff was that he was being routinely monitored, that his wound was healing appropriately, and that he did not need a burn specialist at that time. [Doc. #1-4, p.32] Plaintiff filed a request for administrative remedy on November 26, 2007. The warden responded, noting that Plaintiff was examined by the clinical director and a nurse on November 14, 2007, who found that Plaintiff's burns were healing well. As of December 11, 2007, Plaintiff was continuing to receive pain medication, convalescence from work, and supplies for dressing changes. The warden noted that, according to the video, the incident occurred when Plaintiff stacked too many food pans onto a rack. [Doc. #1-4, p.34-35] Plaintiff appealed the warden's decision to the South Central Regional Office on January 10, 2008. [Doc. #1-4, p.37]

On March 5, 2008, the Regional Director denied Plaintiff's appeal, finding that Plaintiff received appropriate medical care for his burns. [Doc. #1-4, p.43] Plaintiff appealed to the Central Office on April 4, 2008. [Doc. #1-4, p.45] He received acknowledgment from the Central Office of his appeal stating that a response would be issued on or before June 22, 2008. [Doc. #1-4, p.47] Plaintiff was transferred in the month of June, and he never received a response from the Central Office.

Having received no response from the Central Office, Plaintiff then filed the instant suit. Plaintiff submitted a comprehensive set of documents including a detailed complaint, copies of his administrative remedy documents, and a copy of his medical records, among other exhibits. Thus, the Court is convinced that Plaintiff has presented the best case that could be presented by him under these circumstances and that further amendment of the pleadings would serve no useful purpose in this case.

## **LAW AND ANALYSIS**

1. Medical Care

To prevail on a denial of medical care claim, under 42 U.S.C. § 1983, Plaintiff must demonstrate that he was denied adequate medical care in violation of the Eighth Amendment to the United States Constitution. "Although the Eighth Amendment 'does not, by its precise words, mandate a certain level of medical care for prisoners[,]' the Supreme Court has interpreted it as imposing a duty on prison officials to 'ensure that inmates receive adequate ... medical care.'" Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" Easter, 467 F.3d at 463 (citing Wilson v. Seiter, 501 U.S. 294, 297

7

(1991) (quoting Estelle v. Gamble, 429 U.S. 97 (1976)).

A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir.2006) (quoting Farmer, 511 U.S. at 847). Even "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." Id. (citations omitted). A showing of deliberate indifference requires the prisoner to submit evidence that prison officials **refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.** See Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

In fact, far from alleging the deliberate indifference by the medical staff, the facts presented indicate that Plaintiff had access to necessary medical care. Plaintiff submitted medical records showing that he was regularly and frequently examined and treated by the doctor, nurse practitioner, registered nurses, and licensed practical nurses. The medical staff regularly changed Plaintiff's bandages, cleaned his wounds, applied topical medication, administered oral medication, and re-dressed his

wounds.

A complete review of Plaintiff's complaint reveals that he does not actually complain about the medical treatment that he has received at USP-P; rather, he complains that he should have received *additional* treatment from a burn specialist for his first and second degree burns. The decision to refer a patient to a specialist and the question of whether "additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1976). It is well-settled that a prisoner's disagreement with prison officials regarding medical treatment, **does not** give rise to a claim of deliberate indifference. Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991); see also Alfred v. Texas Dept. of Criminal Justice, 80 Fed. Appx. 926 (5th Cir. 2003) (unpublished) (Prison official's refusal to send inmate to specialist for spinal injury did not amount to deliberate indifference even though inmate's doctor provided a referral and the treatment provided at the prison was unsuccessful, where officials provided extensive treatment for inmate's injury). Here, Plaintiff has not alleged that officials ignored his complaints of pain. To the contrary, Plaintiff states that his complaints of pain were addressed with burn ointment, Tylenol 3, ibuprofen, and antibiotics. Nor has he alleged that any of the defendants refused to treat him, intentionally treated him incorrectly, or engaged in *any* conduct

9

that would clearly evince a wanton disregard for any serious medical needs. To the extent that Plaintiff does not believe medical staff that his burn wounds are properly healing, he does not state a claim of deliberate indifference.

2. Deliberate Indifference to Safety

Plaintiff complains that the grate or drain on the floor of the kitchen protrude about two to three inches above the floor. He alleges that the hazard is obvious and that the defendants were area of the condition. To prevail on a claim of deliberate indifference to Plaintiff's safety, Plaintiff must prove both that Defendants knew of and disregarded an excessive risk to his safety. Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). A prison official is liable only if he is deliberately indifferent to a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 837 (1994). A prison official is deliberately indifferent if he knows of an "excessive risk to inmate health or safety" and disregards that risk. Id. To be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Adames v. Perez, 331 F.3d 508, 512 (5th Cir. 2003). In other words, the prison official must be subjectively aware of a substantial risk of serious harm to the inmate. Farmer, 511 U.S. at 839-40. However, mere negligence or neglect do not constitute deliberate indifference. See Fielder v.

Bosshard, 590 F.2d 105, 107 (5th Cir. 1997).

Plaintiff alleges that the defendants were negligent and deliberately indifferent to his safety by not removing or replacing these "defective" grates. While Plaintiff alleges that the defendants knew about the grates, he has failed to allege a deprivation that is "sufficiently serious," resulting in the denial of "the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. at 834 (citations omitted). Plaintiff does not allege that the grates were hidden from him; he states that he knew of their existence and where they were located. Plaintiff has not alleged facts indicating that the defendants knowingly and unnecessarily placed him in a dangerous environment to the extent that his constitutional rights were violated. Plaintiff has not alleged any "subjective culpability" on the part of any defendant. See Farmer v. Brennan, 511 U.S. at 827, 843 n.8.

What Plaintiff has presented here is a trip and fall case, which may or may not state a negligence claim under Louisiana law. It does not state a claim for relief under the United States constitution.

## CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's civil rights action be **DISMISSED WITH PREJUDICE** as failing to state a claim pursuant to 28 U.S.C. §1915(e)(2)(B).

**Under the provisions of 28 U.S.C. §636(b)(1)(©) and**

11

Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglas v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED at Alexandria, Louisiana, this 18th day of May, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE